UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH Z., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 19 C 2354 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Z.[1] seeks judicial review of the final decision of the Commissioner of Social Security finding him ineligible for Supplemental Security Income ("SSI"). Joseph asks the Court to reverse and remand the ALJ's decision, and the Commissioner moves for its affirmance. For the following reasons, Joseph's motion [13] is granted in part and denied in part, and the Commissioner's motion [21] is denied. The ALJ's decision is reversed and this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## BACKGROUND

In 2011 while working as an assistant manager for a retail store, Joseph fell down a flight of stairs. (R. 323, 438). This workplace injury caused Joseph to suffer from, among other things, a traumatic brain injury, post-concussion syndrome, and herniated discs in his lumbar spine. *Id.* at 439, 641. Then in 2014, Joseph was rear-ended by a truck while

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by his first name and the first initial of his last name or alternatively, by first name.

driving, and the injuries from his 2011 workplace injury were exacerbated. *Id.* at 470. As a result of the motor vehicle accident, Joseph additionally suffered from neck and wrist injuries. *Id.* at 470-75. Joseph's medical record documents an array of other conditions as well, including bilateral knee impairments, daily headaches, vertigo, major depressive order, agoraphobia, obsessive compulsive disorder, and obesity. *Id.* at 582-87, 897-99, 932, 937. Joseph's treatment for his various conditions has included Botox injections, spine injections, and pain medication. *Id.* at 451, 462-63, 638, 924, 925.

In September 2015, Joseph filed his application for supplemental security income, alleging that his disability began on June 24, 2011. (R. 283). Joseph later amended his alleged onset date to October 29, 2014. *Id.* at 317. Joseph's claim was initially denied on January 6, 2016, and upon reconsideration on June 1, 2016. *Id*. at 106, 123. Upon Joseph's written request for a hearing, he appeared and testified at a hearing held on January 23, 2018 before ALJ Kimberly Cromer. *Id.* at 40-89. At the hearing, the ALJ heard testimony from Joseph and a vocational expert, Sara Gibson. *Id.*

On April 11, 2018, the ALJ issued a decision denying Joseph's SSI claim. (R. 16-32). The opinion followed the required five-step evaluation process. 20 C.F.R. § 416.920(a) (2012). At step one, the ALJ found that Joseph had not engaged in substantial gainful activity since the alleged onset date. *Id.* at 18.[2] At step two, the ALJ found that Joseph had the severe impairments of obesity, migraines, degenerative disc disease of the cervical and lumbar spine, an unspecified neurocognitive disorder, a right hand lipoma, left hand carpal tunnel syndrome, bilateral knee degenerative joint disease, a right shoulder

---

[2] The ALJ's decision states that Joseph had not engaged in substantial gainful activity since November 4, 2015, but that date appears to have been included in error, as the ALJ earlier acknowledged the alleged onset date as being October 29, 2014. (R. 16). Joseph, too, states that the onset date in this case is October 29, 2014. Doc. [14] at 1.

2

torn rotator cuff, an affective disorder, and anxiety. *Id*. At step three, the ALJ determined that Joseph did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). *Id.* at 19-21.

The ALJ then concluded that Joseph retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except:

> [h]e can never climb ladders, ropes, or scaffolds and can do no work at unprotected heights or around hazardous machinery. He can do no commercial driving. He can occasionally operate left foot controls. He is limited to frequent handling with the right dominant hand. He is limited to frequent handling with the left hand. He can occasionally climb ramps and stairs and occasionally balance, stoop, and kneel. He can never crouch or crawl. He is limited to occasional bilateral overhead reaching. He must avoid loud noises. He is limited to simple routine work with no fast-paced assembly line work where the machine is setting the pace but allowing for work or a more variable rate. He can do no tandem tasks and is limited to only occasional interaction with the public, coworkers, or supervisors.

(R. 21). Based on this RFC, the ALJ determined at step four that Joseph could not perform his past relevant work as a home attendant or customer service clerk. *Id.* at 31. At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Joseph could perform. *Id.* at 31-32. Specifically, the ALJ found that Joseph could work as a packer, assembler, or sorter. Because of this determination, the ALJ found that Joseph was not disabled. *Id*. at 32. The Appeals Council denied Joseph's request for review on February 4, 2019, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-4; *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018).

## **DISCUSSION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 416.920(a); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *See Villano*, 556 F.3d at 562; *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229 (1938). In reviewing an ALJ's decision, the Court may not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the" ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and h[is] conclusions. *See Steele v. Barnhart*, 290 F.3d 936, 938, 941 (7th Cir. 2002) (internal citation and quotations omitted); *see also Fisher v. Berryhill*, 760 Fed. Appx. 471, 476 (7th Cir. 2019) (explaining that the "substantial evidence" standard requires the building of "a logical and accurate bridge between the evidence and conclusion"). Moreover, when the ALJ's "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

The ALJ found Joseph not disabled at step five of the sequential analysis because he retains the RFC to perform other work that exists in significant numbers in the national economy. Joseph argues that the ALJ improperly rejected the opinion of Joseph's long-time treating physician, Dr. Fairbairn. Doc. [14] at 9-12. Specifically, Joseph argues that the ALJ impermissibly played doctor in concluding that Dr. Fairbairn's opinion was not supported by the record. *Id.* at 10-11. The Court agrees.[3] Accordingly, for the reasons discussed below, the ALJ's decision must be reversed.

On August 25, 2017, Dr. James Fairbairn completed a physical residual function capacity statement. (R. 587-590). In the RFC statement, Dr. Fairbairn reported working with Joseph for 30 years. *Id.* at 587. For Joseph's diagnoses, Dr. Fairbairn listed: herniation of lumbar discs with radiculopathy; cervical degenerative disc disease; and bilateral knee

---

[3] Because the Court remands on this basis, the Court does not address Joseph's other arguments.

5

osteoarthritis. *Id.* Dr. Fairbairn stated that Joseph's symptoms included leg sciatic pain, radicular arm pain, and bilateral knee pain. *Id.* In further describing Joseph's pain, Dr. Fairbairn wrote that Joseph had left leg pain that was aggravated by walking, as well as prolonged sitting and standing. *Id.* Dr. Fairbairn further stated that Joseph's bilateral knee pain was aggravated by walking and standing. Joseph's medications, according to Dr. Fairbairn, caused drowsiness, memory loss, and stomach pain. *Id.* Dr. Fairbairn further opined that Joseph's pain and stress was severe enough so as to constantly interfere with his attention and concentration in performing work tasks. *Id.*

Dr. Fairbairn's RFC statement includes several other opinions indicating Joseph's inability to work, including his opinions that: Joseph must lie down and/or recline for about 4 hours in an 8-hour work day; Joseph will need to take six, 30-minute unscheduled breaks in an 8-hour work day; Joseph can only sit, stand, or walk for 10-15 minutes at one time before needing to change positions; and Joseph can only use his hands, fingers, and arms effectively for 10% of an 8-hour work day, with zero effective use of his arms for reaching. *Id.* at 588-89. Contrary to the ALJ's RFC, Dr. Fairbairn opined that Joseph could not climb stairs, ladders, scaffolds, ropes, or ramps. *Id.* at 590. In terms of "off task" time, Dr. Fairbairn wrote that Joseph would be off task more than 30% of the time due to his limitations, and that he would likely miss 5 days of work per month. *Id.* In response to a summary question about Joseph's ability to sustain full time employment, Dr. Fairbairn said that Joseph's "lumbar & cervical degenerative disc disease in addition to memory lapses will make it difficult to sustain work." *Id.* In response to the final question of the RFC questionnaire, Dr. Fairbairn indicated that his opinions were based on Joseph's history

and medical file, physical examinations, consultative medical opinions, progress and office notes, physical therapy reports, and x-rays, CT scans or MRIs. *Id.*

The ALJ stated that she considered Dr. Fairbairn's opinion but accorded it little weight. (R. 30). The ALJ then identified five opinions of Dr. Fairbairn's that she found to be unsupported by the medical record. First, the ALJ stated that the "objective medical record does not show support for the doctor's statement that the claimant cannot climb stairs." *Id.* The ALJ nevertheless "accept[ed] the claimant's degenerative disc disease and radiculopathy and [] precluded the climbing of ladders, ropes, and scaffolding, and limited climbing ramps and stairs to the occasional level." *Id.* Second, the ALJ interpreted Dr. Fairbairn as opining that Joseph's bilateral handling and fingering was reduced by 10% (as opposed to being limited to 10% in an eight-hour workday), and stated that opinion was not supported by the record because "the record does not demonstrate reduction in grip strength." *Id.* Third, the ALJ found that the record lacked support for Dr. Fairbairn's opinion that Joseph would need to lie down for four hours a day, stating: "this appears to be based upon the claimant's reports to the doctor." *Id.* Fourth, the ALJ found Dr. Fairbairn's 10-15 minute limitation on sitting, standing, and walking at one time to be unsupported by the record, as "there is no indication of atrophy or muscle weakness." *Id.* Fifth and finally, the ALJ found Dr. Fairbairn's "off task" opinion to be unsupported, because "as noted above, there is no indication in the record of significant cognitive deficits." *Id.* Even so, the ALJ stated that she accommodated Joseph's claims of memory lapses by limiting him to simple routine work with no fast-paced work tasks. *Id.*

Under the regulation in effect at the time of Joseph's application, a treating physician's opinion regarding the nature and severity of an impairment is entitled to

controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with [ ] other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2); *see* 20 C.F.R. § 416.927 (noting this rule governs claims, like Joseph's, filed before March 27, 2017). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citation omitted). An ALJ must offer "good reasons" for discounting the opinion of a treating physician. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (citations omitted). And an ALJ "must not substitute [her] own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citing *Rohan v. Chater*, 98 F.3d 966, 968 (7th Cir.1996)).

Courts in this Circuit have accordingly remanded the decisions of ALJs who discount physicians' opinions in light of their own, unsupported lay interpretations of medical evidence. *See Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016) (ALJ substituted his judgment for the doctor's without explaining why claimant's normal reflexes and mild to moderate range-of-motion limitations were inconsistent with the treating physician's opinions); *Hoyt v. Colvin*, 553 Fed. Appx. 625, 627 (7th Cir. 2014) (ALJ inappropriately substituted his own medical judgment in place of physician's by interpreting electromyography exam and lumbar MRI as inconsistent with claimant's pain complaints. *But see Back v. Barnhart*, 63 F. App'x 254, 259 (7th Cir. 2003) (ALJ did not improperly "play doctor" by stating that if claimant's shoulder pain was as bad as alleged there would likely be some physical manifestation of those limitations such as muscle weakness or atrophy).

For instance, in *Lambert v. Berryhill*, the ALJ discounted the opinion of a treating neurosurgeon, finding that there was no objective basis for the neurosurgeon's opinion because "x-rays revealed good fusion and good position of the sacroiliac joint." 896 F.3d 768, 774 (7th Cir. 2018). Upon review, the Seventh Circuit determined that the ALJ's treating physician analysis was inappropriate, in part, because "no medical source opined that the imaging results were inconsistent with Lambert's complaints of disabling pain." *Id.* The *Lambert* Court remanded the ALJ's decision and held that the ALJ "failed to heed [the] principle" that "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Id.* (citations omitted).

Similarly in *Otis v. Saul*, the ALJ rejected a consultative examining physician's opinion that the claimant could stand 2 hours in a 6-8 hour workday because the opinion "was outweighed by 'the claimant's lack of significant muscle strength deficits, as well as his lack of use of an assistive device for ambulation or balance.'" No. 1:18-CV-372-WCL-JPK, 2019 WL 7669923, at *3 (N.D. Ind. Dec. 19, 2019), *report and recommendation adopted*, No. 1:18CV372, 2020 WL 408407 (N.D. Ind. Jan. 24, 2020). The *Otis* Court found that the ALJ's strength deficit finding did not constitute a good explanation for rejecting the physician's standing opinion. *Id.* In particular, the court took issue with the fact that the ALJ's decision "failed to explain how Plaintiff's muscle strength at any level bears on his ability to stand for six hours during an eight-hour workday," when the claimant's impairments were not limited to muscle weakness, but rather included chronic pain, neuropathy, and degenerative disc disease. *Id.* Overall, the ALJ's "independent reliance" on the claimant's muscle strength to "depart from a medical opinion regarding

such limitations" suggested that the ALJ improperly played doctor, and the court remanded the ALJ's decision. *Id.*

Along those same lines, this Court recently remanded the decision of an ALJ who appeared to have "improperly resorted to playing doctor when he found that evidence of full strength in [the claimant's] extremities was inconsistent with [the treating physician's] opinion on [the claimant's] limitations and severe pain." *Charles B. v. Saul*, No. 18 C 1377, 2019 WL 3557055, at *9 (N.D. Ill. Aug. 1, 2019). Significantly, the ALJ in that case did not "point to any medical evidence indicating that muscle strength must be diminished as a result of severe pain." *Id.*

Here, at least three of the five explanations provided by the ALJ show that the ALJ improperly substituted her opinion for that of Dr. Fairbairn's. First, the ALJ apparently discounted Dr. Fairbairn's opinion regarding Joseph's reduction in bilateral handling and fingering because "the record does not demonstrate reduction in grip strength." (R. 30). Second, the ALJ found that Dr. Fairbairn's opinion with respect to Joseph's sitting, standing, and walking was inconsistent with the objective medical record, "as there is no indication of atrophy or muscle weakness." *Id*. Third, the ALJ dismissed the doctor's off-task opinion because "there is no indication in the record of significant cognitive deficits." *Id.*

These three explanations are unsupported lay opinions. Beginning with the ALJ's explanations regarding Joseph's strength and lack of muscle atrophy, the ALJ here, like the ALJs in *Otis*, and *Charles B.*, failed to explain why those characteristics contradicted Dr. Fairbairn's opinions, which were founded on a variety of Joseph's diagnoses, including radiculopathy, cervical degenerative disc disease, and bilateral knee osteoarthritis.

10

(R. 587). The record indicates that those impairments caused Joseph a great deal of pain, *see, e.g.*, *id.* at 889, 1023, and it is unclear to the Court, without further explanation from the ALJ, how Joseph's strength or lack of atrophy rules out the possibility that Joseph has disabling pain warranting Dr. Fairbairn's 10-15 minute standing, sitting, or walking restriction. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (citation omitted) ("ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."). Perhaps more importantly, the ALJ does not point to any physician or medical expert who opined that Joseph's grip strength or lack of muscle atrophy was inconsistent with Dr. Fairbairn's opinions or Joseph's claims of disabling pain. *See Lambert*, 896 F.3d at 774. While it is entirely proper for an ALJ to consider the consistency of a treating physician's opinion with the rest of the medical record, *see* 20 C.F.R. § 416.927(c), an ALJ cannot determine the significance of particular medical findings without the assistance of a medical expert. *Lambert*, 896 F.3d at 774.

The ALJ's conclusion that the record did not reflect significant cognitive deficits is another head scratcher. In weighing Dr. Fairbairn's "off task" opinion, the ALJ stated that she noted the lack of significant cognitive deficits earlier in her decision. (R. 30). Indeed, in the page preceding her weighing of Dr. Fairbairn's opinion, the ALJ stated "it is noted that there is no indication in the overall records of significant cognitive deficits." *Id.* at 29. However, the ALJ did not cite to any records or physicians in support of that statement. Although it is true, as the ALJ repeatedly states throughout her decision, that Joseph has no history of mental health treatment, the record shows that Joseph lacked insurance, and it is therefore improper for the ALJ to use that lack of treatment against Joseph. *See Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014), *as amended* (Aug. 20, 2014) (citation

11

omitted); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (citations omitted). Moreover, the lone, relied-upon[4] medical opinion in the record regarding Joseph's mental health belies the ALJ's "note" about no significant cognitive deficits. As the ALJ acknowledged, Joseph attended a consultative psychological evaluation in May 2016, at which time he was assessed as suffering from: an unspecified neurocognitive disorder, major depressive order, agoraphobia, and obsessive-compulsive disorder. (R. 582-85). Without further explanation from the ALJ, or a supporting opinion from a medical professional, the ALJ has failed to provide the requisite accurate and logical bridge for her conclusion that the record does not show significant cognitive deficits. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

The Commissioner argues that the ALJ provided good reasons for rejecting Dr. Fairbairn's opinions, and that because her findings were reasonable, this Court should affirm the ALJ's decision. Doc. [22] at 4. The Court does not find the ALJ's unexplained lay interpretations of medical evidence, even if they seem reasonable, to constitute good reasons for discounting Dr. Fairbairn. It is no doubt tempting for ALJs, who have heavy caseloads, to utilize common sense to weed through high volumes of medical data. But, as the Seventh Circuit has warned, "[c]ommon sense can mislead; lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). For instance, it is reasonable for the ALJ to think that somebody with normal grip strength would be able to engage in normal bilateral handling and fingering, but it is

---

[4] The ALJ explained that she gave "less weight" to the state agency physicians' mental RFC determinations because "the expanded record supports moderate limitations in understanding, remembering, and applying information, moderate limitations in social functioning, moderate limitations in concentration, persistence, and maintaining pace, and mild limitations in adaptation." (R. 29).

also possible, based on this record, that Dr. Fairbairn's handling and fingering opinion was founded on Joseph's radiculopathy, the lipoma on his right hand, or the carpal tunnel on his left. (R. 508, 906, 1023). Neither the ALJ, nor this Court, has the medical expertise required to make that call.

In fact, the very medical records the ALJ cites show that her lay constructions of the medical data were off the mark. For example, the ALJ relies on Dr. Tamragouri's observation that Joseph had 5/5 grip strength to discount Dr. Fairbairn's opinion that Joseph would only be able to use his hands effectively for 10% of an eight-hour workday. *Id.* 30, 507. Yet, despite Dr. Tamragouri's grip strength observation, Dr. Tamragouri's clinical impressions still included Carpal Tunnel syndrome on the left side. *Id.* at 507-08. The ALJ likewise cites an August 2017 treatment record from Midwest Orthopedics at Rush Hospital to diminish Dr. Fairbairn's fingering and handling opinion. *Id.* at 30. That record does document Joseph's intact grip strength, but also documents orthopedic surgeon Dr. Verma assessing Joseph with chronic right shoulder pain, "consistent with partial supraspinatus rotator cuff tear and biceps tendinitis." *Id.* at 1023. The record further discusses Joseph's various future surgeries, including a procedure to remove Joseph's right forearm lipoma. *Id.* In sum, neither of the medical professionals opining on Joseph's condition in these records found Joseph's grip strength to be determinative, and they interpreted the medical data as showing severe impairments that do not appear inconsistent with Dr. Fairbairn's opinions.

In support of her conclusion that the medical record did not show atrophy or loss of muscle strength supporting Dr. Fairbairn's sitting, standing, and walking limitation, the ALJ cites Dr. Tamragouri's consultative examination, Dr. Fairbairn's progress notes from

13

June 2016 to August 2017, and the August 2017 treatment record from Rush. *Id.* at 30. But aside from Dr. Tamragouri's note that Joseph retained 5/5 power in his upper and lower extremities, (*see* R. 508), this Court cannot find any discussion of muscle strength or atrophy in the records cited by the ALJ in her weighing of Dr. Fairbairn's opinions. It therefore seems that the ALJ's conclusion that lack of muscle weakness and atrophy contradicts Dr. Fairbairn's opinions is her lay interpretation of an *omission* in the medical records she cited.

Regardless, the actual content of the records cited by the ALJ do not appear to be inconsistent with Dr. Fairbairn's sitting, standing, and walking restriction. Dr. Tamragouri's consultative examination showed reduced ranges of motion and a history of multiple injuries, spine stenosis, and vertebral fractures. *Id.* at 508. Dr. Fairbairn's treatment notes show Joseph's diagnosis of lumbar and cervical degenerative disc disease with radiculopathy and include an August 2015 EMG, discussed further below, which was interpreted as "highly suggestive of chronic and active left L4-5 and L5-S1 radiculopathy which can explain the patient's current symptoms." *Id.* at 889, 906, 907. In the August 2017 Rush treatment record, Dr. Verma interpreted Joseph's May 2017 X-ray of his left knee as showing "subtle irregularity to the posterior horn of the medial meniscus likely representing radial tear" with a "small joint effusion," "mild [ ] joint narrowing," and "mild lateral migration of the patella." *Id.* at 1023. The ALJ's unexplained lay intuitions, belied by the very records she cites in support, do not constitute good reasons for discounting Dr. Fairbairn's opinions.

The Commissioner does not directly address the ALJ's use of lay interpretations in his brief. But he does cite two cases in support of the general proposition that treating

14

physicians' opinions which are inconsistent with the record can be discounted. The Court does not dispute that black letter law. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016). The Court also acknowledges that the ALJs in the two cases cited by the Commissioner, *Winsted* and *Skarbek*, appear to have discounted the opinions of treating physicians based on their interpretations of various treatment notes, without meeting disapproval from the Seventh Circuit. *See Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019); *Skarbek v. Barnhart*, 390 F.3d 500, 503-04 (7th Cir. 2004). However, the Seventh Circuit has also made it clear, time and time again, that ALJs cannot independently rely on their lay opinions to interpret medical data. *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (citations omitted); *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018), *amended on reh'g*, (Aug. 30, 2018); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014), *as amended on denial of reh'g*, (Oct. 24, 2014). This case, moreover, is sufficiently distinct from *Winsted* and *Skarbek*. In those cases, the ALJs adequately articulated inconsistencies evident from the treating physicians' own treatment notes. *Winsted*, 923 F.3d at 478; *Skarbek*, 390 F.3d at 503-04. Whereas here, the ALJ has failed to adequately explain the inconsistencies, and the very treatment records she cites in support of her decision to discount Dr. Fairbairn's opinions appear to support—rather than contradict—Dr. Fairbairn's opinions.

The Commissioner further defends the ALJ's decision on grounds that the ALJ did not discuss in her weighing of Dr. Fairbairn's opinion. For instance, the Commissioner avers that the objective record did not support Dr. Fairbairn's 10-15 minute sitting, standing, and walking limitation, "as plaintiff had *normal coordination* and muscle strength with no atrophy or weakness in his *lower extremities*." Doc. [22] at 6 (emphasis

15

added). In that way, the Commissioner adds specificity to the ALJ's decision by isolating Joseph's lower extremities and buttresses the analysis with the new factor of Joseph's coordination. Under the *Chenery* doctrine, however, this Court reviews the case based on the ALJ's analysis, not the Commissioner's supplemented version of the ALJ's assessment. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). At any rate, the conclusion that Joseph's normal coordination in a brief physical exam meant that he could not have disabling pain warranting a sitting, standing, or walking restriction would still be an unexplained lay interpretation—not a good reason for discounting Dr. Fairbairn's opinion. The Commissioner's augmenting, therefore, does not persuade the Court that the ALJ provided good reasons for discounting Dr. Fairbairn's opinions.

Even if the ALJ had given good reasons for not affording Dr. Fairbairn's opinions, controlling weight, the ALJ was still required to address the factors listed in 20 C.F.R. § 416.927(c) to determine what weight to give the opinions. *See Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) ("ALJ should explicitly consider the details of the treatment relationship and provide reasons for the weight given to" treating physicians' opinions).

The ALJ gave Dr. Fairbairn's opinions little weight but failed to minimally address several of the regulatory factors which tend to support Dr. Fairbairn's opinions. Specifically, the ALJ did not discuss the nature and extent of the treatment relationship, the frequency of examinations, the supportability of the decision, or whether Dr. Fairbairn had a relevant specialty. The ALJ did not acknowledge that Dr. Fairbairn was Joseph's primary care physician, specializing in internal medicine and cardiology, who had treated Joseph for thirty years. (R. 587, 683, 1069). The record demonstrates that Dr. Fairbairn

16

saw Joseph on at least seven occasions during the relevant time period, *id.* at 907, 910, 912, 914, 916, 1079, 1086, and that his treatment of Joseph included physical examinations, the ordering and reviewing of diagnostic imaging, and the referral of various specialists. *See, e.g.*, *id.* at 890, 901, 906, 909, 911. As an example, about a week before Dr. Fairbairn completed his physical RFC for Joseph, he referred Joseph to Dr. Li Zhang for an electroneuromyography (EMG) test. *Id.* at 890. On August 17, 2017, Joseph presented to Dr. Zhang "with a sharp shooting pain in the left leg for the last couple of years along with chronic low back pain." *Id.* at 889. Dr. Zhang conducted the EMG test, which resulted in an abnormal study "highly suggestive of chronic and active left L4-5 and L5-S1 radiculopathy which can explain the patient's current symptoms." *Id.* The August 2017 EMG test also represents the supportability of Dr. Fairbairn's opinions, another factor the ALJ failed to discuss. *See* 20 C.F.R. § 416.927(c)(3) ("Supportability. The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). In his physical RFC form, Dr. Fairbairn stated that his opinions were based Joseph's history and medical file, physical examinations, consultative medical opinions, progress and office notes, physical therapy reports, and x-rays, CT scans or MRIs. (R. 590). At best, the ALJ's discussion of the treating physician factors was limited to her discussion of the consistency with Dr. Fairbairn's opinion with the record, and that analysis, as explained above, was flawed.

The ALJ was required to address the treating physician factors and explain how they impacted her decision to give little weight to Dr. Fairbairn's opinions. *Schreiber v. Colvin*, 519 Fed. Appx. 951, 959 (7th Cir. 2013) (citation omitted) (ALJ shall "sufficiently

account[ ] for the factors in 20 C.F.R. § 404.1527"). Because the ALJ did not address these factors, the Court is unable to determine whether he properly assigned little weight to Dr. Fairbairn's opinions. Accordingly, a remand is necessary for the ALJ to properly analyze and explain the weight to be afforded Dr. Fairbairn's opinions in light of all the regulatory factors. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (remanding where the ALJ failed to "explicitly address the checklist of factors as applied to the medical opinion evidence").

The ALJ's improper weighing of Dr. Fairbairn's opinion is not harmless error. Harmless error occurs when "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support" because remanding would be "a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). In this case, if the ALJ had resisted the urge to play doctor in weighing Dr. Fairbairn's opinions, or if the ALJ had assessed Dr. Fairbairn's opinions per the regulatory factors, she might have given more weight to Dr. Fairbairn's opinions. Dr. Fairbairn's physical RFC was more restrictive than the ALJ's. For instance, the ALJ concluded that Joseph could engage in frequent handling with his left and right hands, which per the regulations, is from one third to two thirds of an 8-hour work day. *See* SSR 83-10, 1983 WL 31251, at *6. Whereas Dr. Fairbairn opined that Joseph's handling would be limited to 10% of the workday. *Id.* at 589. The vocational expert in this case testified that if Joseph's handling was reduced to less than frequently, he would not be able to perform the jobs of packer, assembler, or sorter, which were the jobs selected by the ALJ in step five. *Id.* at 32, 82-83. As a result, it is not predictable with great confidence that the agency would reinstate its

18

decision on remand, and the ALJ's error is not harmless. *See Lambert,* 896 F.3d at 776 (holding ALJ's error in giving little weight to treating physician not harmless where outcome was not foreordained, since at the very least, ALJ formulated RFC without including treating physician's most recent opinions).

On remand, the ALJ must properly consider and weigh Dr. Fairbairn's opinions. If the ALJ does not give controlling weight to Dr. Fairbairn's opinions, she must articulate her consideration of the regulatory factors.

## CONCLUSION

For the foregoing reasons, Joseph's motion for summary judgment [13] is granted in part and denied in part, the Commissioner's Motion for Summary Judgment [21] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: September 3, 2020

                                                Sunil R. Harjani
                                                United States Magistrate Judge